UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LENNIE R. MITCHELL

    Plaintiff,

        v.

DONALD YATES, et al.,

    Defendants.

Civil Action No.  05-0332 (JDB)

## MEMORANDUM OPINION

Plaintiff Lennie R. Mitchell, a police officer with the District of Columbia Metropolitan Police Department ("MPD"), brings this action against the District of Columbia and two supervisory police officers, Donald Yates and Renee Holden, alleging discrimination on the basis of disability and retaliation in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 et seq. (Count Four), the D.C. Human Rights Act ("DCHRA"), D.C. Code §§ 2-1401.01 et seq. (Count Five), and 42 U.S.C. § 1983 (Count Three).  He also raises causes of action under D.C. common law, including abuse of process, malicious prosecution, and intentional infliction of emotional distress (Counts One, Two, and Six).  Defendants District of Columbia and Yates have submitted a motion to dismiss for failure to state a claim on which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).[1]  Defendant Holden was served with the

---

[1] Plaintiff's contention that the motion addresses the original complaint and does not dispute Counts Four and Five is incorrect.  See Pl. Mem. at 1 n.1.  Defendants' motion inadvertently references the first amended complaint, but the arguments in the motion clearly are intended to refer to the second amended complaint and address all counts therein.  The motion is properly treated as seeking dismissal of the second amended complaint.

    Plaintiff also asserts that defendants should not be permitted to file the motion to dismiss because the deadline for such motions set forth in the briefing schedule has already passed and the

(continued...)

complaint after defendants' motion was filed, and has not yet responded to the complaint.[2] However, because the arguments raised by the District and Yates apply with equal force to the claims against Holden, the Court addresses the claims against Holden based on the arguments presented in the pending motion. For the reasons explained below, the Court grants defendants' motion as to the federal law claims and remands the remaining claims to the Superior Court of the District of Columbia.

## BACKGROUND

The second amended complaint alleges the following facts, which are taken as true at this stage of the litigation for purposes of defendants' motion. Plaintiff has been employed by the MPD as a police officer since 1989, where he has held numerous positions, including patrol officer, public safety lecturer, member of the Mayor's Nuisance Property Task Force, and various assignments within the Major Narcotics Branch. On October 10, 2002, plaintiff suffered a seizure during the night while asleep at his home. His treating physician diagnosed plaintiff as susceptible to seizures and placed restrictions on his work assignments because stressful situations could bring on additional seizures. Plaintiff was then assigned to administrative duties within the

---

[1](...continued)
defendants have used the motion to delay discovery. Although the Court looks with disfavor on late-filed motions, the Court finds that the three-week delay in filing caused no prejudice to plaintiff and discovery is not necessary to address the legal arguments raised in defendants' motion. The interests of judicial economy also favor consideration of defendants' arguments early in the litigation. Accordingly, the Court exercises its discretion to permit the late filing of defendants' motion.

[2] Plaintiff's proof of service indicates that a process server delivered the summons and second amended complaint to a person at Holden's dwelling house or usual place of abode on September 19, 2005. Pl. Surreply Mem. at 2 & Ex. 1.

MPD, following notification to the District of his condition and the need for a reasonable accommodation.

On June 9, 2004, Detective Renee Holden, plaintiff's supervisor, informed plaintiff that the following day he would be assigned to duties associated with the funeral of the late President Ronald Reagan and would need to bring his uniform. Plaintiff asserts that Holden assigned him the funeral duties with the intent to deprive plaintiff of the work accommodation that MPD had previously provided. Plaintiff protested the assignment as being in contravention of his medical restrictions because it would have required the performance of work beyond the administrative duties assigned to him as an accommodation of his medical condition. Holden used profanity at plaintiff, and threatened to terminate his employment if he refused to show up for duty the next day in uniform. That same day, plaintiff and his union representative met with Holden to resolve the issue, and Holden once again reacted with a barrage of profanity.

Sergeant Donald Yates then served plaintiff with an official notice of proposed suspension of plaintiff's D.C. motor vehicle operator's permit because of his susceptibility to seizures. Yates knew that plaintiff's seizure had occurred 20 months earlier and that plaintiff had not been operating a vehicle at the time of that seizure. Plaintiff alleges that Yates nonetheless issued the notice to harass, intimidate, and harm plaintiff. The notice falsely claimed that plaintiff had operated a motor vehicle while under the influence of alcohol or drugs or while physically or mentally unqualified to operate a motor vehicle by reason of diabetic coma or seizure.

The next day, plaintiff suffered a recurrent seizure as a result of the stress from the change in assignment and the actions of Holden and Yates. The MPD revoked his police powers on June 16, 2004, at Yates' suggestion.

Plaintiff subsequently appeared before the Department of Motor Vehicles ("DMV") on July 22, 2004, for the show cause hearing regarding the notice of proposed suspension of his driver's permit. Yates failed to appear despite being directed to do so. The hearing officer dismissed and terminated the case. That same day, plaintiff received a clearance letter from DMV verifying that plaintiff's driving privilege was valid in the District of Columbia. Plaintiff alleges that, as a result of Holden's and Yates' actions against him, he has suffered substantial damages, including recurrent seizures, and that MPD senior management received actual or constructive notice of the conduct of Holden and Yates, but failed to take any action to prevent or remedy plaintiff's injuries. Holden and Yates were not disciplined for their actions against plaintiff and continue to be employed by the District of Columbia.

## STANDARD OF REVIEW

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) will not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also Haynesworth v. Miller, 820 F.2d 1245, 1254 (D.C. Cir. 1987). All that the Federal Rules of Civil Procedure require of a complaint is that it contain "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Dura Pharmaceuticals, Inc. v. Broudo, 125 S. Ct. 1627, 1634 (2005) (quoting Conley, 355 U.S. at 47). "Given the Federal Rules' simplified standard for pleading, '[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002) (quoting Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)).

Under Rule 12(b)(6), the plaintiff's factual allegations must be presumed true and should be liberally construed in his or her favor. Leatherman v. Tarrant Cty. Narcotics and Coordination Unit, 507 U.S. 163, 164 (1993); Phillips v. Bureau of Prisons, 591 F.2d 966, 968 (D.C. Cir. 1979). The plaintiff must be given every favorable inference that may be drawn from the allegations of fact. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000). Conclusory legal allegations, however, need not be considered by the court. Domen v. Nat'l Rehabilitation Hosp., 925 F. Supp. 830, 837 (D.D.C. 1996) (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).

## ANALYSIS

**I.    Disability Discrimination under the ADA**

The ADA bars a covered employer from "discriminat[ing] against a qualified individual with a disability because of the disability of such individual in regard to . . . [the] terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The Act provides that a person is disabled if he: (1) has a physical or mental impairment that substantially limits one or more major life activities; (2) has a record of such impairment; or (3) has been regarded as having such an impairment. 42 U.S.C. § 12102(2)(A)-(C). Accordingly, a plaintiff is disabled if: "(1) he suffers from an impairment; (2) the impairment limits an activity that constitutes a major life activity under the [ADA]; and (3) the limitation is substantial." Haynes v. Williams, 392 F.3d 478, 82 (D.C. Cir. 2004).

Defendants move to dismiss on the ground that plaintiff does not have a "disability" within the meaning of the ADA because the complaint does not indicate that the alleged impairment -- susceptibility to seizures -- has substantially limited any of plaintiff's major life activities.

Plaintiff responds that dismissal is improper because he has provided a "short and plain statement" of the claim and its factual basis under Fed. R. Civ. P. 8(a) and the pleading of a prima facie case of discrimination is not required. Plaintiff also argues that he is substantially limited in the major life activity of working.

As a threshold matter, the Court clarifies the standard of pleading applicable to this case. Plaintiff is correct that <u>Swierkiewicz v. Sorema, N.A.</u>, 534 U.S. 506 (2002), rejected the creation of a heightened pleading standard in discrimination cases -- there, cases brought under Title VII and the Age Discrimination and Employment Act. Thus, the Supreme Court held that a plaintiff is not required to plead the elements of a prima facie case of discrimination as set forth in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973), noting that those elements were developed only to establish one manner in which a plaintiff may raise an inference of discrimination by indirect evidence. <u>Swierkiewicz</u>, 534 U.S. at 510-11. The Supreme Court did not address, however, whether the "short and plain statement" required under Rule 8(a) requires a plaintiff to provide notice of the specific basis for plaintiff's protected status as disabled, a matter separate from the <u>McDonnell Douglas</u> prima facie framework and the issue of evidence that would support an inference of discrimination. Nothing in <u>Swierkiewicz</u> indicates that notice pleading in discrimination cases eliminates the requirement to plead a "short and plain statement" that would put a defendant on notice of the basis of a plaintiff's claim of being an individual with a disability. Indeed, the Supreme Court has previously upheld dismissal of an ADA action for failure to state a claim where the plaintiffs failed adequately to allege how their impairment substantially limited them in the major life activity of working. See <u>Sutton v. United Air Lines, Inc.</u>, 527 U.S. 471, 488-89, 494 (1999). Accordingly, plaintiff's complaint must adequately allege

facts sufficient to support the claim that he has a "disability" within the meaning of the ADA, or else be subject to dismissal.

Construing the complaint in the light most favorable to plaintiff, it certainly can be read, as described more expansively in plaintiff's brief, as alleging that plaintiff must avoid all types of work-related stressful situations due to his medical condition, which essentially limits him to administrative duties. Pl. Mem. at 22-25. However, the legal conclusion asserted by plaintiff -- that he is therefore substantially limited in the major life activity of working -- is not consistent with the law. As the Supreme Court stated in Sutton:

> When the major life activity under consideration is that of working, the statutory phrase "substantially limits" requires, at a minimum, that plaintiffs allege they are unable to work in a broad class of jobs . . . . To be substantially limited in the major life activity of working, then, one must be precluded from more than one type of job, a specialized job, or particular choice of job. If jobs utilizing an individual's skills (but perhaps not his or her unique talents) are available, one is not precluded from a substantial class of jobs. Similarly, if a host of different types of jobs are available, one is not precluded from a broad range of jobs.

Sutton, 527 U.S, at 491-92; see also Duncan v. Washington Metro. Area Transit Auth., 240 F.3d 1110, 1115 (D.C. Cir. 2001) ("a plaintiff must allege and prove that in his particular circumstances, taking into account the appropriate factors, his impairment prevents him from performing a 'substantial class' or 'broad range' of jobs otherwise available to him"). Here, plaintiff's complaint concedes that he is capable of performing as a police officer with administrative duties -- the duties in his present position. The complaint does not suggest a limitation of any other major life activity -- nor does plaintiff's brief.[3] Therefore, the Court

---

[3] Plaintiff's contention that he is also disabled based on the "regarded as" provision of the ADA fails for the same reason. As plaintiff alleges in his complaint, defendants were aware that he could perform administrative duties and assigned him to such a position. By plaintiff's own
(continued...)

concludes that plaintiff has failed to allege facts suggesting that he is substantially limited in a major life activity and, hence, that he has not sufficiently alleged that he is disabled under the law. Accordingly, plaintiff's claim of disability discrimination under the ADA will be dismissed for failure to state a claim.[4]

## II.     Retaliation

Plaintiff also alleges that defendants retaliated against him for protesting the reassignment when Yates issued the notice of proposed suspension of his motor vehicle operator's permit. Defendants move to dismiss on the ground that plaintiff has not alleged an essential element of the claim -- an adverse employment action. Plaintiff contends that the notice of proposed suspension constitutes an adverse employment action.

The ADA prohibits retaliation against any individual who has, inter alia, opposed practices that he reasonably and in good faith believed were unlawful under their respective provisions.[5] See 42 U.S.C. § 12203(a); see also George v. Leavitt, 407 F.3d 405, 417 (D.C. Cir. 2005) (discussing requirement of "good faith, reasonable belief" of unlawful employment practice under Title VII opposition clause). Under the Act, an adverse employment action is a prerequisite to

---

[3](...continued)
account, then, defendants did not "regard" him as substantially limited in the major life activity of working.

[4] The Court declines to resolve plaintiff's claims under the DCHRA -- disability discrimination as well as retaliation -- in light of the dismissal of the federal claims. Although the requirements of the DCHRA mirror those of the ADA, the Court has weighed the factors relevant to the exercise of supplemental jurisdiction and determined that the District of Columbia law claims -- including those under the DCHRA -- should be remanded to D.C. Superior Court for resolution. See infra at 17-19.

[5] The Court assumes without deciding that plaintiff has met this requirement.

bringing suit. See Brown v. Brody, 199 F.3d 446, 452-53 (D.C. Cir. 1999) (an "element required for discrimination and retaliation claims . . . is thus some form of legally cognizable adverse action by the employer").[6] An adverse employment action requires that there be "materially adverse consequences affecting the terms, conditions, or privileges of [plaintiff's] employment or her future employment opportunities such that a reasonable trier of fact could conclude that the plaintiff has suffered objectively tangible harm." Brown, 199 F.3d at 457.

The sole adverse action alleged by plaintiff is the issuance of the notice of proposed suspension of his motor vehicle operator permit. Second Am. Compl. ¶¶ 18-22; Pl. Mem. at 26. However, plaintiff does not allege anywhere in his complaint or briefs that the threatened suspension had any adverse impact on the terms and conditions of his employment. On the contrary, his complaint states that Yates did not appear at the DMV show cause hearing and the case was dismissed. Id. ¶ 26. Plaintiff contends that the proposed notice was nonetheless an adverse employment action because "he would no longer be permitted to drive a motor vehicle for the MPD (as he had been doing for the past several years) if his license was indeed suspended." Pl. Mem. at 26 (emphasis added). The fact remains that, by his own account, his license was not suspended and thus the loss of driving privileges never came to pass. In the absence of an adverse employment action, plaintiff's retaliation claim under the ADA must be dismissed.

---

[6] Brown refers to adverse employment action as an element of the prima facie case set forth in McDonnell Douglas, but explains in its analysis that it stems from the requirement in Title VII (and other federal statutes prohibiting discrimination) that a person must be "aggrieved" in order to bring an action for relief. See Brown, 199 F.3d at 455. Like Title VII, the ADA limits private rights of action for retaliation to persons "aggrieved" by an employer's actions. See 42 U.S.C. § 12203(c). Because of this and other similarities in the statutes proscribing discriminatory and retaliatory employment practices, the standards applicable to a retaliation claim under the ADA are considered the same as those set forth in Title VII and other federal statutes prohibiting retaliation. See Brown, 199 F.3d at 456 & n.10.

**III.    42 U.S.C. § 1983**

Plaintiff brings a separate disability discrimination claim against all defendants based on 42 U.S.C. § 1983, seeking damages for alleged violations of the Equal Protection Clause of the Fourteenth Amendment with regard to his disability -- or more precisely, his mental or physical impairment, arguably a less rigorous standard for disability than that set forth in the ADA.[7] Second Am. Compl. ¶¶ 38-40.  Defendant District of Columbia moves for dismissal of the claim on the ground that plaintiff has failed to allege that an official municipal policy or custom caused the alleged constitutional violation.  Defendant Yates moves to dismiss on the ground that he possesses qualified immunity against this claim.  Defendants' arguments imply, albeit inexactly, that the factual allegations, even if true, do not give rise to a violation of the Equal Protection Clause because defendants' actions bore a rational relationship to a legitimate governmental purpose.  This issue is relevant to both municipal liability and qualified immunity.

Before turning to those issues, the Court notes that plaintiff's reliance on the Fourteenth Amendment is misplaced because that constitutional provision, which applies only to States, has

---

[7] Plaintiff's brief purports to base his § 1983 claim on violations of the ADA as well.  As discussed above, the complaint fails to a state claim under the ADA, and thus the ADA claim cannot be the predicate for a § 1983 action.  Defendants ask the Court to hold that a plaintiff may never bring a disability discrimination claim under § 1983 because Congress intended the ADA to be the sole federal remedy for such claims.  See Def. Reply Mem. at 2-3.  The circuits are in disagreement on this issue.  Compare Grey v. Wilburn, 270 F.3d 607, 610 (8th Cir. 2001) (§ 1983 claim may not be based on violation of ADA or the Equal Protection Clause because the comprehensive enforcement scheme set forth in the ADA indicates that Congress did not intend such violations to be actionable under § 1983), with Discovery House, Inc. v. Consolidated City of Indianapolis, 319 F.3d 277, 281 (7th Cir. 2003) ("Our court . . . has consistently declined to find that other similar statutes [citing the ADA] preclude § 1983 relief when the § 1983 claim is based directly on a constitutional violation, not a statutory one"), and Day v. Wayne County Bd. of Auditors, 749 F.2d 1199, 1205 (6th Cir. 1984) (Title VII plaintiffs may bring § 1983 claims where the "employer conduct . . . violates both Title VII and rights derived from another source -- the Constitution or a federal statute -- which existed at the time of the enactment of Title VII").  The Court declines to decide this issue in light of the dismissal of the § 1983 claim on other grounds.

no applicability to the District of Columbia.  See Women Prisoners of the District of Columbia Dep't of Corr. v. District of Columbia, 93 F.3d 910, 924 (D.C. Cir. 1996) (citing Bolling v. Sharpe, 347 U.S. 497, 499 (1954)).  Thus, technically, the complaint fails to state a claim for relief under § 1983 on this ground alone.  However, the District of Columbia is subject to the requirements of the Fifth Amendment Due Process Clause, which contains an equal protection component that is considered substantially the same as the Equal Protection Clause, and thus the standards developed under the Equal Protection Clause are applicable to the District.  See id.; see also Fraternal Order of Police v. United States, 152 F.3d 998, 1002 (D.C. Cir. 1998) ("Equal protection analysis is substantially identical under the Fifth Amendment and the Fourteenth"), reh'g granted on other grounds, 173 F.3d 898 (D.C. Cir. 1999).  The Court therefore proceeds to address whether plaintiff's complaint adequately alleges a violation of the equal protection component of the Fifth Amendment Due Process Clause because it is substantially the same claim as the one alleged in the complaint, and there is little doubt but that plaintiff would seek leave of court to amend the complaint to bring such a claim.

      **A.**      **District of Columbia**

To determine whether the complaint adequately alleges a claim of municipal liability, a two-step inquiry is involved:  "First, the court must determine whether the complaint states a claim for a predicate constitutional violation.  Second, if so, then the court must determine whether the complaint states a claim that a custom or policy of the municipality caused the violation."  Baker v. District of Columbia, 326 F.3d 1302, 1306 (D.C. Cir. 2003).  Thus, the Court first must consider whether the allegations of the complaint state a claim for a violation of equal protection based on disparate treatment due to plaintiff's disability.  Defendants suggest that as long as Yates' actions were "reasonable" under the circumstances there is no violation of equal

protection. The legal standard for determining the constitutionality of disparate treatment of the disabled is somewhat more refined than a general reasonableness test, but yields the same bottom line. The Supreme Court has held that disability is not a suspect or quasi-suspect class under the Equal Protection Clause, and thus government action as to the disabled "incurs only the minimum 'rational basis' review applicable to general social and economic legislation." See Board of Trustees of Univ. of Alabama v. Garrett, 531 U.S. 356, 366 (2000) (quoting Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 446 (1985)). Under this standard, disparate treatment of the disabled "cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." Id. at 367. The Supreme Court has further explained that the existence of "any reasonably conceivable state of facts that could provide a rational basis for the classification," even one previously unstated, defeats recovery by the plaintiff. See id. at 367 (quoting FCC v. Beach Comm., 508 U.S. 307, 313 (1993)); see also Waters v. Rumsfeld, 320 F.3d 265, 269 (D.C. Cir. 2003) ("we need not dwell on [plaintiff's contentions regarding the legislature's true motivations] because 'it is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature.' . . . All that is required is that there be 'plausible reasons for Congress' action.'") (quoting Beach Comm., 508 U.S. at 313-14)).

Applying these standards here, the Court finds, taking the factual allegations of the complaint as true, that plaintiff fails to state a claim for an equal protection violation. By plaintiff's own account, Yates issued the notice of proposed suspension of plaintiff's motor vehicle operator's permit "on account of his susceptibility to seizures." Second Am. Compl. ¶ 18. Plaintiff alleges that this decision was not supported by medical evidence or other justification

because Yates knew that plaintiff had not suffered a seizure in the preceding 20 months and had not operated a vehicle at the time of that first seizure. Id. ¶¶ 19-20. However, plaintiff concedes that he is susceptible to seizures – which is the very reason the MPD granted his request for an administrative duty assignment. Id. ¶¶ 9-10. As the complaint alleges, plaintiff suffered a recurrent seizure the day after he received the notice of proposed suspension. Id. ¶ 23. The Court finds that there is a rational connection between Yates' issuance of the notice of proposed suspension of plaintiff's motor vehicle permit based on his susceptibility to seizures and MPD's interest in the safe operation of its vehicles. Plaintiff's repeated assertions that he had the "right to be treated equally as any other officer" with regard to driving privileges (Pl. Mem. at 17-18) ignores the holdings in City of Cleburne and Garrett that municipalities and officials may treat those with disabilities differently as long as there is a rational basis for doing so.

      To the extent that plaintiff relies upon his reassignment to President Reagan's funeral on June 9, 2004 to support his equal protection claim against the District, this too fails to state a claim. In Garrett, the Supreme Court held: "States are not required by the Fourteenth Amendment to make special accommodations for the disabled, so long as their actions toward such individuals are rational. They could quite hardheadedly – and perhaps hardheartedly – hold to job qualification requirements which do not make allowance for the disabled. If special accommodations for the disabled are to be required, they have to come from positive law and not through the Equal Protection Clause." Garrett, 531 U.S. at 367-68. Thus, accepting as true plaintiff's factual allegations that MPD knowingly failed to accommodate his susceptibility to seizures in his duty assignment, he nonetheless fails to state a claim under the Fifth Amendment.

Even if the alleged conduct violated the Fifth Amendment, moreover, plaintiff's complaint must be dismissed for failure to satisfy the second element necessary to state a claim for municipal liability.  Liability under § 1983 cannot rest on a respondeat superior theory, but instead is limited to constitutional torts caused by a municipal "policy or custom."  Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 691, 694 (1978).  Thus, "the court must determine whether the plaintiff has alleged an 'affirmative link,' such that a municipal policy was the 'moving force' behind the constitutional violation."  Baker, 325 F.3d at 1306 (quoting City of Oklahoma City v. Tuttle, 471 U.S. 808, 823 (1985), and City of Canton v. Harris, 489 U.S. 378, 389 (1989)).

Plaintiff asserts that MPD senior management failure to act was the moving force behind the alleged constitutional violation.  Baker identifies two ways in which a failure to act can constitute a "policy or custom" that can give rise to municipal liability under § 1983:  "the adoption through a knowing failure to act by a policymaker of actions by his subordinates that are so consistent that they have become 'custom'; or the failure of the government to respond to a need (for example, training of employees) in such a manner as to show 'deliberate indifference' to the risk that not addressing the need will result in constitutional violation."  Baker, 326 F.3d at 1306-07 (further explaining that deliberate indifference is an objective rather than subjective standard).  However, plaintiff's complaint alleges only a failure to discipline Yates and Holden.[8]  There are no

---

[8] Plaintiff asserts for the first time in his opposition brief that the DMV regulation authorizing the notice of proposed suspension of motor vehicle permits, 18 D.C. Mun. Reg. § 302.5, constitutes a municipal policy causing the equal protection violation.  This regulation states:  "Operating a motor vehicle while under the influence of intoxicating liquor or drug(s), or while physically or mentally unqualified to operate a motor vehicle by reason of diabetic coma, or epileptic or other seizure, is grounds for suspension or revocation."  Id.  Of course, factual assertions in a brief cannot remedy a deficient complaint.  Moreover, plaintiff's attempt to rely on this regulation is puzzling because his complaint rests heavily on the absence of any "medical evidence" indicating any seizures that would impair his ability to operate a motor vehicle.  Second
(continued...)

allegations of "actions by subordinates that are so consistent they have become 'custom'" or failure to respond in a manner showing "deliberate indifference." The entirety of plaintiff's allegations relevant to municipal responsibility, set forth here, reveals this deficiency as self-evident:

> 29. Upon information and belief and upon that basis the Plaintiff asserts that Defendants Holden and Yates were not disciplined for their wrongful conduct and they continue to be employed by the Defendant District of Columbia.
> 30. On information and belief, senior management of the Metropolitan Police Department were aware and received constructive and/or actual notice of the actions taken by Defendants Holden and Yates and yet failed to take any action to prevent or remedy the damages sustained by Plaintiff Lennie R. Mitchell.
> . . . .
> 39. The above-described conduct of Defendants Holden, Yates and the District of Columbia violated the rights of the Plaintiff not to be deprived of equal protection of the laws on the basis of disability under the Fourteenth Amendment to the United States Constitution (Art. XIV, U.S. Constitution).
> 40. Furthermore, the conduct of Defendant Yates constituted intentional and flagrant violation of the rights of the Plaintiff and wanton disregard for the health and welfare of the Plaintiff as to warrant punitive damages.

Second Am. Compl. ¶¶ 29-30, 34. These allegations of actual or constructive notice to senior management and <u>inaction</u> <u>after</u> the alleged incident of disability discrimination simply fail to meet the standard for demonstrating municipal responsibility and support only respondeat superior liability, which was rejected in <u>Monell</u>.

Plaintiff attempts to save his claim by asserting in his opposition brief that MPD management showed "deliberate indifference" by acquiescing in issuance of the notice of proposed suspension. However, invoking the phrase "deliberate indifference," without more, cannot save a § 1983 claim from dismissal. See <u>Atchinson v. District of Columbia</u>, 73 F.3d 418,

---

[8](...continued)
Am. Compl. ¶¶ 19-20. In other words, he argues essentially that the regulation does <u>not</u> authorize Yates' conduct. In any event, even if plaintiff's inconsistent position in his opposition brief were considered, it would provide no basis for municipal liability. It is beyond reasonable dispute that the regulation has a rational relationship to the legitimate governmental interest in public safety.

422 (D.C. Cir. 1996) ("We agree that a § 1983 complaint alleging municipal liability must include some factual basis for the allegation of a municipal policy or custom . . . . [W]e think it is possible for a section 1983 plaintiff to satisfy Rule 8 by alleging both a failure to train and an unusually serious instance of misconduct that, on its face, raises doubt about a municipality's training policies.") (emphasis added).  Because plaintiff's complaint fails to allege facts sufficient to support a violation of equal protection and, furthermore, fails to allege a municipal policy or custom causing plaintiff's injuries, the § 1983 claim against the District of Columbia will be dismissed for failure to state a claim on which relief can be granted.

      **B.**      **Individual Liability -- Donald Yates and Renee Holden**

Defendant Yates moves to dismiss the § 1983 claim against him, insofar as he is sued in his individual capacity, on the ground that he possess qualified immunity as to the alleged constitutional violation.  Renee Holden has not yet responded to the complaint, but the Court proceeds to address whether the § 1983 claim can proceed against her individually because the qualified immunity analysis applies with equal force to that claim.

Qualified immunity protects government officials from individual liability in § 1983 actions "'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Int'l Action Ctr. v. United States, 365 F.3d 20, 24 (D.C. Cir. 2004) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  To determine whether an individual defendant is protected by qualified immunity, the Court "must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right." Id.  If the court finds such a violation, it must then determine "whether that right was clearly

established at the time of the alleged violations." Id.  Thus, one only reaches the issue of immunity if a constitutional violation is adequately pled in the first instance.[9]

The first issue -- whether plaintiff has adequately alleged the deprivation of a constitutional right -- is the same threshold issue addressed above as to municipal liability.  The Court has concluded that, pursuant to City of Cleburne and Garrett, defendant Holden's decision to require plaintiff to perform police duties without accommodating his medical condition and Yates' subsequent issuance of a notice of proposed suspension of his motor vehicle permit have a "reasonably conceivable" rational basis, and thus do not give rise to an equal protection violation. That holding applies equally to the claims brought against Holden and Yates in their individual capacities.  Therefore, plaintiff's § 1983 claims against Holden and Yates fail to allege the deprivation of a constitutional right, and there is no occasion further to consider whether qualified immunity protects the individual defendants from liability.

## IV.    Claims under District of Columbia Law -- Supplemental Jurisdiction

The only remaining claims are those brought under District of Columbia law -- that is, plaintiff's common law tort claims for abuse of process, malicious prosecution, and intentional infliction of emotional distress, and the claims for disability discrimination and retaliation under the DCHRA.  Although defendants have moved to dismiss these claims as well, the Court must

---

[9] Plaintiff asserts that qualified immunity should not be considered because he is suing Yates in his official capacity. Pl. Mem. at 5. Other parts of plaintiff's brief, however, characterize the suit as an individual capacity suit. Id. at 18, 29 (Yates "is subject to liability and damages"). Thus, the Court addresses whether the complaint states a claim for relief based on individual liability under § 1983. To the extent that plaintiff does sue Yates and Holden in their official capacities, such claims are in reality no different than the claims against the District of Columbia and hence must be dismissed. See Atchinson, 73 F.3d at 424 ("A section 1983 suit for damages against municipal officials in their official capacities is . . . equivalent to a suit against the municipality itself.").

-17-

determine whether the exercise of supplemental jurisdiction over the local law claims is appropriate, in light of the dismissal of the federal claims.

The supplemental jurisdiction statute provides that a district court may decline to exercise jurisdiction over related non-federal claims if "the district court has dismissed all claims over which it had original jurisdiction." 28 U.S.C. § 1367(c)(3); see Shekoyan v. Sibley Int'l, 409 F.3d 414, 423 (D.C. Cir. 2005) ("A district court may choose to retain jurisdiction over, or dismiss, pendent state law claims after federal claims are dismissed."). The exercise of supplemental jurisdiction remains discretionary on the part of a federal court, but "[i]n the usual case in which all federal-law claims are dismissed before trial, the balance of factors to be considered under the pendent jurisdiction doctrine -- judicial economy, convenience, fairness, and comity -- will point toward declining to exercise jurisdiction over the remaining state law claims." Shekoyan, 409 F.3d at 423.

The Court has concluded, based on considerations of efficiency and the relative expertise of the local courts on matters of local law, that dismissal of the remaining claims is warranted. In deciding to exercise its discretion to decline jurisdiction over the District of Columbia law claims, the Court takes account of the fact that discovery in this case has been minimal. Defendants have not fully responded to plaintiff's written discovery requests, nor have any depositions taken place.[10] In other words, the investment of resources has not been so great as to warrant retaining jurisdiction at this stage of the proceedings. See Role Models America, Inc. v. Penmar Dev't Corp., -- F.Supp. 2d --, 2005 WL 2461890, *12 (D.D.C. 2005). Furthermore, the Court

---

[10] Although the discovery deadline expired on September 30, 2005, plaintiff requested an extension of the deadline based on the lack of progress in discovery.

believes that, in the interests of comity, federal judges should refrain from deciding cases founded solely on local law when the requirements for diversity jurisdiction are not present, as is the case here.  Id.  Accordingly, the Court declines to exercise supplemental jurisdiction.  The only question remaining is whether this matter should be dismissed or remanded to D.C. Superior Court.  See Gary v. Long, 59 F.3d 1391, 1400 (D.C. Cir. 1995) (noting that either remand or dismissal without prejudice may be ordered under § 1367(c)).  Considering that plaintiff originally filed this action in D.C. Superior Court, the Court will remand the case to that court.

## CONCLUSION

For the foregoing reasons, the Court will grant the motion to dismiss submitted by defendants District of Columbia and Donald Yates as to Counts Three and Four.  The Court will also dismiss those claims as to defendant Renee Holden because the legal conclusions reached apply with equal force to the federal claims alleged against her.  The Court will remand the remaining claims to the Superior Court of the District of Columbia.  An appropriate Order accompanies this opinion.


                                               /s/
                                        JOHN D. BATES
                                    United States District Judge


Dated:    October 18, 2005

Copies to:
Patricia A. Cresta-Savage
601A Indiana Avenue, NW, Suite 101
Washington, DC 20004
Email: pat@pcslaw.net
    *Counsel for plaintiff*

George E. Rickman
District of Columbia Office of the Attorney General
441 Fourth St., NW
6th Floor South
Washington, DC 20001
Email:  george.rickman@dc.gov
    *Counsel for defendants*